{¶ 44} I must respectfully dissent. Liberty is not measured in small doses. While it is true Delmonico was not in handcuffs and no bright lights were shining in his eyes, I believe a Miranda warning was required before the police questioned him.
 {¶ 45} When considering a claim for ineffective assistance of counsel, the Supreme Court of Ohio has adopted the following standard, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[5]
 {¶ 46} Regarding Miranda warnings, the Supreme Court of Ohio has held the following:
 {¶ 47} "Pursuant to Miranda, statements `stemming from custodial interrogation of the defendant' must be suppressed unless the defendant had been informed of his Fifth and Sixth Amendment rights before being questioned. `Custodial interrogation' means `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"[6]
 {¶ 48} The critical constitutional question to be answered, therefore, is whether Delmonico was in custody when he was questioned in his own home. It is critical that the facts of this matter are reviewed in their totality. Police officers from several local, state, and federal agencies conducted a lengthy search of the premises, which lasted fourteen hours. The police considered Delmonico a suspect in the alleged crimes. Delmonico was initially asked to remain outside his residence, while the police conducted their search. Later, he was allowed to reenter his home, but was commanded not to touch anything. Detective Cleveland began questioning Delmonico about the missing beaker. Finally, Detective Cleveland needed to resort to prodding Delmonico to get him to answer his questions.
 {¶ 49} I believe these facts, taken together, suggest that Delmonico's liberty was restrained in a significant way. He was permitted to be in his home, but could not touch anything. While he was not "in custody" in a traditional sense (such as at police station or in the back seat of a cruiser), Miranda still applied to the situation. Several police officers, including officers from the United States Drug Enforcement Agency, essentially "took over" Delmonico's home for fourteen hours. Delmonico was not in a position to believe he could leave his residence during this time. As such, he was essentially confined to his residence, in the presence of numerous police officers. Thereafter, he was aggressively questioned until he provided incriminating statements.
 {¶ 50} The majority asserts that "we acknowledge Detective Cleveland's testimony that he `prodded' appellant while questioning him. [However,] we do not know the specific nature of the detective's actions because his method of interrogation was not explored at trial."
 {¶ 51} I agree. No one can ever know the facts surrounding the confession in a constitutional sense, because they have never been tested. A motion to suppress, the vehicle designed to permit the trial court to weigh those facts, was never filed. Since the admissions made by the defendant were essentially the whole case used to convict him, there is no question that a motion to suppress, if filed and granted, would have altered the outcome of this matter.
 {¶ 52} The failure to file the motion to suppress was ineffective assistance of counsel.
[5] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.
[6] State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 88, quoting Miranda v. Arizona (1966), 384 U.S. 436, 444.